COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Agee and Senior Judge Coleman


JAMI M. KRING
                                    MEMORANDUM OPINION*
v.   Record No. 2701-00-3              PER CURIAM
                                       MAY 8, 2001
NATHAN A. BEAN


             FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                    Charles H. Smith, Jr., Judge

           (Barry L. Proctor, on brief), for appellant.

           (Sage B. Johnson; Johnson & Johnson, P.C., on
           brief), for appellee.


     The sole issue in this case is whether the trial court abused

its discretion in awarding custody of the minor child to Nathan A.

Bean, the child's father.  Upon review of the record and briefs of

the parties, we conclude that the appeal of Jami M. Kring, the

child's mother, is without merit.  Accordingly, we summarily

affirm the decision of the trial court.  Rule 5A:27.

                            BACKGROUND

     Bean and Kring are the parents of Austin Bean, who was born

on April 3, 1996.  Bean and Kring were in high school when Austin

was born, and they resided with Kring's parents, Donald and

Cecilia Cottage, after Austin was born.  They never married.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

In August or September 1997, Bean and Kring had ended their relationship, and Bean moved to another residence, leaving Austin with Kring. The parties entered into an agreement in March 1999 wherein Kring received primary physical custody of Austin, and Bean had liberal visitation with Austin and was required to pay monthly child support. Bean timely paid his child support and regularly exercised his visitation rights.

In February 2000, Bean learned from Kring's parents that Kring had gotten married, was residing at another residence, and had left Austin in their care. Kring did not tell Bean about the changes in Austin's living arrangements. Bean then filed a petition in the juvenile and domestic relations district court (J&DR court) seeking custody of Austin. The J&DR court found that Kring's circumstances had "ebbed and flowed considerably" over the past year with respect to her living arrangements and employment, whereas Bean's life had stablilized. The J&DR court also found that Kring had not kept Bean informed about Austin's living arrangements and had not consulted Bean concerning these changes. The J&DR court awarded Bean custody of Austin and ordered Kring to pay child support. Kring appealed the J&DR court decision to the trial court.

The trial court heard evidence on the custody matter on July 18, 2000. At that time, Bean had been employed for the same manufacturing company for three years. He was earning approximately $10 per hour. Bean testified that Austin had

-

adjusted well to the change in custody. He had taken Austin on a vacation and had enrolled the child in swimming lessons. Austin has his own room and own bed at Bean's two-bedroom apartment. Austin sleeps with his grandparents when he stays at the Cottages' residence.

Bean testified that Kring had not paid any of the child support payments as ordered by the J&DR court. Bean also testified that Kring failed to inform him when she enrolled Austin in pre-school, enrolled Austin in counseling sessions, or took Austin to a summer camp. Bean testified that Kring never informed him of her work schedule so that he could have custody of Austin on days when Kring was working. At the time of the hearing, Bean had been taking Austin to the Cottages' residence on the days he worked. He had made arrangements to take Austin to a day care facility in the future.

Kring testified that she left her parents' residence in January 2000 to reside with a girlfriend, Wendy Campbell, who had recently had a baby and was experiencing financial difficulties. Kring had offered to "help" Campbell with the baby. Campbell testified that Kring and her then boyfriend, now husband, shared a bedroom in her apartment for about two weeks. Campbell stated that Kring was at the apartment for approximately twenty-four hours a day, four days per week. Neither Kring nor her boyfriend had jobs or contributed financially to the living expenses at Campbell's apartment, except occasionally buying groceries.

-

Campbell never saw Austin at the apartment. Kring stated she did not take Austin with her to the apartment because it was not a "stable" environment for him. In January 2000 Kring married her boyfriend.

After Bean filed his petition for custody of Austin, Kring and her husband moved into the Cottages' residence. They both obtained employment at a fast food restaurant. Kring and her husband reside in the Cottages' basement. When Austin visits Kring, he sleeps on the second floor of the house with his grandparents. Kring testified that she takes care of Austin at the Cottages' residence on the days she does not work. Kring admitted she had never provided Bean with a copy of her work schedule despite the J&DR court order to do so.

The trial court awarded custody of Austin to Bean. Kring appeals that decision to this Court.

ANALYSIS

When determining which parent should have custody the trial court must decide what is in the best interests of a child and is required to consider the factors listed in Code § 20-124.3. The trial court is not required to quantify or elaborate on what weight or consideration it has given to each of the factors in Code § 20-124.3 or to weigh each factor equally. See Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995). The trial court's findings, however, must have some foundation based on the evidence in the record, and if the trial court's findings

-

lack evidentiary support, its determination of child custody is an abuse of discretion. Cf. Trivett v. Trivett, 7 Va. App. 148, 153-54, 371 S.E.2d 560, 563 (1988). The trial court is vested with broad discretion to safeguard and promote the child's interests, and its decision will not be reversed unless plainly wrong or without evidence to support it. See Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).

Kring argues the trial court did not consider the factors listed in Code § 20-124.3 in making its decision. However, the court order entered on October 31, 2000 states that the trial court considered the factors set forth in the statute as well as the evidence presented at the hearing and the exhibits filed. Furthermore, at the conclusion of the hearing, the trial court emphasized that it based the custody decision on Austin's best interests. The trial court found that both Kring and Bean were capable of being "mature young people" and "good" and "fit" parents. However, the trial court concluded that Kring's move to Campbell's apartment had been "a ruse" in order for her "to be with her now husband." "The court is the judge of the credibility of the witnesses, and its findings are of great weight on appeal." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 869 (1990). The court further found that, prior to leaving the Cottages' residence, Kring should have made arrangements with Bean concerning Austin's care, stating that Bean should have had a

-

"say-so" regarding where Austin would live once Kring left her parents' residence.

In addition, the trial court concluded that Kring's failure to cooperate with Bean and her failure to pay the court-ordered child support were factors to be considered. On the other hand, Bean had consistently paid child support and regularly exercised his visitation rights with Austin. The trial court was "very impressed with [Bean]'s stability," "demeanor," "maturity," and the arrangements he had made to care for Austin. The trial court stated, "I think he's got his head on straight now and his act together." However, the trial court found that Kring did not exhibit these characteristics, and it found that her lack of maturity had been an "impediment to her being the kind of mother she should be."

The record demonstrates that the trial court carefully considered and weighed the evidence. Its decision focused on Austin's best interests. We cannot say that the custody decision of the trial court was plainly wrong or without evidence to support it. Accordingly, the trial court's decision is affirmed.

Affirmed.